[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Douglas I. Milan for plaintiff.
James W. Shea for defendant.
MEMORANDUM OF DECISION
Defendants John B. Oestreicher and New Haven Savings Bank ("Bank") have moved for summary judgment as to the claims asserted against them by the plaintiffs. The gravamen of the First Count, which is directed against defendant Oestreicher, is that he has refused to convey to the plaintiffs property known as 275 Branford Road in North Branford after the plaintiffs demanded such conveyance on the ground that the church members who sold the property to him were not the actual owners of the property and had appropriated it under an invalid quitclaim deed.
In the First Count, the plaintiffs allege that in June 1989, Oestreicher paid Claudia Smith and John DiDuca $235,000.00 for the property. The plaintiffs allege, in effect, that this transfer was invalid because Claudia Smith and John DiDuca had acquired the property, which had been purchased by St. Stephen's Anglican Church Parish Ltd. in 1987, from three corporate church officers who the plaintiffs claimed lacked authority to convey church property. The plaintiffs seek, as to this count of the complaint, a judgment declaring the quitclaim deed to DiDuca and Smith null and void and an order restoring possession CT Page 2123-E of the property to St. Stephen's Anglican Church Parish Ltd.
It is undisputed that the property conveyed was not the church building itself, but a parcel adjacent to the property on which the church building stands, on property known as 279 Branford Road.
The plaintiffs' claims against movant New Haven Savings Bank are set forth in the Second Count of the complaint. After incorporating by reference the allegations against defendant Oestreicher, the plaintiffs claim that "New Haven Savings Bank has a mortgage recorded on the land records of the Town of North Branford for the parcel of property designated as 275 Branford Road, North Branford, Connecticut, which was authorized by St. Stephen's, the rightful owner of the property." (Complaint, Second Count, para. 27). Though the complaint does not specifically so allege, it appears that the plaintiffs are referring to a purchase money mortgage entered on the land records in connection with defendant Oestreicher's purchase of the property. The plaintiffs seek a judgment declaring this mortgage interest to be void.
The movants claim that they are entitled to judgment as a matter of law and that there are no material facts in dispute.
The movants submit among other documents the following items in support of their motion for summary judgment:
1. A warranty deed entered in Volume 194, page 970-71 of the land records of the Town of North Branford by which John DiDuca and Claudia D. Smith convey all their interest in the property known as 275 Branford Road to John Oestreicher. The warranty deed was witnessed and was signed by John DiDuca on June 6, 1989 and by Claudia D. Smith on June 3, 1989.
2. A quitclaim deed to Smith and DiDuca dated February 2, 1989 was recorded at volume 194, page 238 of the North Branford land records. This deed is executed by St. Stephen's Anglican Church Parish Ltd. by "Emmalise Robbins, Treasurer a/k/a Warden," "Clark Robbins, President" and "Claudia D. Smith, Secretary."
3. Admissions signed by John DiDuca stating that all receipts of the sale to Oestreicher were used to pay off a mortgage that St. Stephen's had issued to Colony Savings Bank and to pay down second and third mortgages. CT Page 2123-F
4. Parish minutes indicating the elections, at various times, of Emmalise Robbins as Warden, and Claudia Smith as Treasurer/Secretary.
5. By-Laws stating that the warden "shall . . . have such powers as may be reasonably construed as belonging to the chief executive of any organization."
6. Minutes of the vestry dated January 8, 1989 authorizing Clark Robbins, President, Claudia Smith, Secretary/Treasurer and Emmalise Robbins, Warden "to act without further consultation of the vestry to make decisions or sign papers on behalf of St. Stephen's" in the face of "the increasing possibility that the church property would be foreclosed upon by the Colony Savings Bank and the fact that the DiDuca's were pressing for the Church Corporation to Quit Claim the property to them."
The plaintiffs have filed counter-affidavits asserting the following:
1. The Canons of the Anglican Church (Parish of New England) Ltd. provide, at Canon 6, Section 3, that no vestry may encumber or alienate any real property of any parish without the written consent of the Bishop and Standing Committee of the Diocese or of the Bishop and Council of Advice of the Missionary District of which the parish is a part.
2. John H. Perry-Hooker was the Bishop at the time of the quitclaim deed and he did not at any time give permission for the sale of the church property. (Affidavit of John H. Perry-Hooker).
It is undisputed that St. Stephen's Anglican Parish Ltd. is a corporation organized under the laws of the State of Connecticut. The plaintiffs make no claim that they ever brought any action to enjoin the transfer of parish property to Smith and DiDuca or that they ever filed any lis pendens, affidavit or notice of any kind in the North Branford land records to the effect that the validity of the transfer to Smith and DiDuca was invalid or ultra vires.
Practice Book § 384 provides that summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 384; Connelly v. Housing Authority,213 Conn. 354, 364 (1990); Zichichi v. Middlesex Memorial Hospital,213 Conn. 399, 402, 528 A.2d 805 (1987). Although the party CT Page 2123-G seeking summary judgment has the burden of showing the nonexistence of any issue as to material fact; D.H.R. ConstructionCo. v. Donnelly, 180 Conn. 430, 434, 429 A.2d 908 (1980); a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. Practice Book §§ 380, 381; Burns v. Hartford Hospital,192 Conn. 451, 455, 472 A.2d 1257 (1984). In deciding on a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. TownBank Trust Co. v. Benson, 176 Conn. 304, 309, 407 A.2d 971
(1978); Strada v. Connecticut Newspapers, Inc., 193 Conn. 313,317, 477 A.2d 1005 (1984). "The test is whether a party would be entitled to a directed verdict on the same facts." Batick v. Seymour,186 Conn. 632, 647, 443 A.2d 471 (1982).
The legal issue presented is whether the conveyance to Oestreicher and the mortgage interest of New Haven Savings Bank can be held to be void because of the claim that the vestry of St. Stephen's Parish lacked authority to convey church property to Oestreicher's grantors, Smith and DiDuca.
The plaintiff has not alleged in its complaint that the defendants had any knowledge of the claimed lack of authority of the church vestry to convey the land to the defendants' grantors, and it is undisputed that the Branford land records contain no notice of the plaintiff's claim as to the invalidity of the conveyance to Smith and DiDuca.
The Supreme Court has long ruled that "[i]t has always been the policy of our law that the land records should be the authentic oracle of title on which a bona fide purchaser or attaching creditor might safely rely." Safford v. McNeil, 102 Conn. 684, 687
(1925). While a purchaser who is aware of a claim of corporate incapacity to convey is not entitled to rely on the land records as a basis for determining clear title, the Supreme Court has noted inHollywyle Association, Inc. v. Hollister, 164 Conn. 389, 394
(1973), that the equities are different with regard to "reliance placed on the land records by one is a stranger to a spurious conveyance," and they recognized as a "specter" that "unless a subsequent purchaser can rely on a deed signed by the secretary of a corporation, that purchaser will face an insurmountable burden, he will no longer be entitled to trust the system of recordation of land titles but must at his peril investigate any corporate deed appearing in the chain of title." Hollywyle Association, Inc. v.CT Page 2123-HHollister, 164 Conn. 394.
It is undisputed that the deed to Smith and DiDuca was signed not only by the corporate secretary but also by the president and treasurer or warden.
In the absence of any claim that Oestreicher is other than a bona fide encumbrancer, or that the land records were such as to put the defendants on notice of the plaintiff's claim that the transfer to Smith and DiDuca was unauthorized, the plaintiff's claim against these defendants must fail as a matter of law.
The motion for summary judgment is granted as to defendant Oestreicher and New Haven Savings Bank.
Hodgson, J.